FAY LEE, *an infant, etc.*

*v.*

SIMON P. COMER *and* LARK LEE

(No. 13550)

Decided May 18, 1976.

*W. H. Ballard, II, Ballard & Brumfield, G. David Brumfield* for appellant.

*Tutwiler, Crockett & LaCaria, Charles A. Tutwiler* for appellees.

CAPLAN, JUSTICE:

This appeal involves one aspect of the parental immunity doctrine. Specifically, the question is: Can the plaintiff, an unemancipated daughter of the defendant, maintain an action in tort against said defendant for injuries allegedly received by her in an accident which occurred while she was a passenger in an automobile owned by the defendant? The trial court's answer in the negative prompted this appeal.

Subsequent to the institution of this action the plaintiff and defendant Comer were married to each other. On January 16, 1973 the defendants filed a motion to dismiss the action, defendant Comer contending that his marriage to the plaintiff operated as a bar to this action against him. The dismissal was requested on behalf of defendant Lark Lee on the ground that the plaintiff was his unemancipated infant daughter residing with him at the time she was injured. The plaintiff readily admits that by reason of her marriage to defendant Comer she cannot now maintain an action against him. The only

issue, therefore, is the propriety of the action against her father.

The defendants' motion to dismiss was sustained by the trial court and judgment was entered dismissing the action on its merits. This appeal followed.

From the pleadings and affidavits contained in the record it appears that on April 30, 1972 the plaintiff asked her father, Lark Lee, for permission to use his automobile for the purpose of driving to a restaurant in Welch, West Virginia. When she made this request it was known to her father that she did not have an operator's license, but it was understood that defendant Comer would drive the car. In his affidavit Lark Lee clearly acknowledged that he knew that Simon Comer would drive the automobile and that he readily gave his permission. Defendant Lee said in his affidavit: "On April 30, 1972, my daughter, Faye, was a member of my household, and I let her and Simon use my car for my daughter's pleasure and convenience in going to the drive-in to get something to eat, and at the time and place of the accident, Simon Comer was driving my car with my permission and with my consent for the pleasure and convenience of my said daughter, Faye."

Faye and Simon did drive to Welch in defendant Lee's automobile. Upon their return, Simon allegedly lost control of the vehicle and it plunged over an embankment, causing injury to the plaintiff. This action ensued.

It is undisputed that the plaintiff was unemancipated at the time of her injury. It is also undisputed that since her marriage to Simon Comer she has been totally independent of her father and has been wholly emancipated. Contrary to the contention of the plaintiff, her emancipation subsequent to her injury gives her no additional right to maintain this action. Her right to sue must exist at the time of the injury and her subsequent emancipation is of no consequence. "An emancipated child cannot maintain an action against his parent for a tort committed before emancipation if at the time of the

wrong the action was not maintainable." 59 Am. Jur. 2d, **Parent and Child**, §157. *See, Shea v. Pettee*, 19 Conn. Sup. 125, 110 A.2d 492 (1954); *Tucker v. Tucker*, (Okla.) 395 P.2d 67 (1964); and *London Guarantee & Accident Co. v. Smith*, 242 Minn. 211, 64 N.W.2d 781 (1954). In the instant case we must determine whether the plaintiff, an unemancipated infant at the time of her injury, can maintain an action against her father.

The doctrine of parental immunity, as currently known, was introduced into American jurisprudence by the Mississippi Supreme Court in *Hewlett v. George*, 68 Miss. 703, 9 So. 885 in 1891, and rapidly spread throughout the various jurisdictions of our country. The basis for that doctrine was the preservation of domestic or family tranquillity and was expressed by that court in the following language:

> The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand.

In recent years the application of this doctrine has begun to recede as rapidly as it had once spread. There has been a definite trend throughout our courts toward the abrogation or limitation of such doctrine. Many jurisdictions have carved out exceptions to the doctrine which indicates a "growing judicial distaste for a rule of law which in one sweep disqualified an entire class of injured minors." *Gibson v. Gibson*, 92 Cal. Rptr. 288, 479 P.2d 648, 650 (1971). We perceive no reason why minor children should not enjoy the same right to legal redress for wrongs done to them as others enjoy. Certainly the need for and value of family tranquillity must not be

discounted, but to hold that a child's "pains must be endured for the peace and welfare of the family is something of a mockery." *Badigian v. Badigian,* 9 N.Y.2d 472, 482, 215 N.Y.S.2d 35, 43, 174 N.E.2d 718, 724 (1961) (Fuld, J., dissenting).

The general rule is that where there is a negligent injury, liability results; any immunity from such liability is the exception. Justice Rutledge said, in *President and Directors of Georgetown College v. Hughes,* 130 F.2d 810 (1942), "We start with general principles. For negligent or tortious conduct liability is the rule. Immunity is the exception."

Prior to *Hewlett, supra,* and presently, English and American common law had permitted and now permits a minor child to maintain an action against his parent for matters of contract and property. *Sorensen v. Sorensen,* _____ Mass. _____, 339 N.E.2d 907 (1975). Recognizing that such right of action by a minor child has long existed, it is stated in Prosser, Torts, §122 [4th ed. 1971], "Although there were no old decisions, the speculation on the matter has been that there is no good reason to think that the English law would not permit actions for personal torts as well ...." *See, Dunlap v. Dunlap,* 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055 (1930). Experience reveals that some of the most bitter family disputes arise over property, but parental immunity does not in such a case limit the cause of action. "Is it reasonable to say that our law should protect the property and contract rights of a minor more zealously than the rights of his person?" This question, posed by the Arizona Supreme Court in *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282, 41 A.L.R. 3rd 891 (1970), was emphatically answered in the negative. We concur in that answer.

Family tranquillity which serves as the basis for the public policy on which parental immunity is founded is not a proper justification to deprive a minor child of the rights alluded to above. We do not here advocate the total abrogation of the parental immunity doctrine. We do, however, abrogate totally that doctrine in cases

where a child is injured in an automobile accident as a result of his parent's negligence.

The rights of such minor child must be considered in light of today's contemporary conditions and modern concepts of fairness. In the realm of automobile accident cases we cannot brush aside or ignore the almost universal existence of liability insurance. Where liability insurance exists the domestic tranquillity argument is no longer valid, for, in fact, the real defendant is not the parent, but the insurance carrier. *Chase v. Greyhound Lines, Inc.*, W. Va., 195 S.E.2d 810 (1973) (Concurring opinion). We quote with approval from *Hebel v. Hebel*, (Alaska) 435 P.2d 8 (1967); "We are of the further view that although the existence of liability insurance does not create liability its presence is of considerable significance here. To persist in adherence to family—harmony and parental-discipline-and-control arguments when there is automobile liability insurance involved is in our view unrealistic. If there is insurance there is small possibility that parental discipline will be undermined, or that the peace of the family will be shattered by allowance of the action." *Accord: Streenz v. Streenz, supra; Sorensen v. Sorensen, supra; Gibson v. Gibson, supra; Petersen v. City and County of Honolulu*, 51 Hawaii 484, 462 P.2d 1007 (1970); *Rupert v. Stienne*, _____ Nev. _____, 528 P.2d 1013 (1974); *Rigdon v. Rigdon*, (Ky.) 465 S.W.2d 921 (1971); *Plumley v. Klein*, 388 Mich. 1, 199 N.W.2d 169 (1972); *Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966); *France v. A.P.A. Transport Corp.*, 56 N.J. 500, 267 A.2d 490 (1970); *Gelbman v. Gelbman*, 23 N.Y.2d 434, 245 N.E.2d 192 (1969); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971); *Silesky v. Kelman*, 281 Minn. 431, 161 N.W.2d 631 (1968); *Goller v. White*, 20 Wis. 2d 402, 122 N.W.2d 193 (1963); *Smith v. Kauffman*, 212 Va. 181, 183 S.E.2d 190 (1971).

All of the immediately above cited cases involve actions instituted by unemancipated minors against a parent for injuries received in vehicular accidents. In each of those cases such minor was permitted to maintain the

action, demonstrating the landslide trend toward the abandonment of the parental immunity doctrine. Furthermore, a great majority of those cases discuss the importance of liability insurance, while at the same time pointing out, either directly or by necessary inference, that such suits will be allowed "regardless of the presence or absence of insurance coverage." *Petersen v. City and County of Honolulu, supra.*

In the opinion of *Smith v. Kauffman, supra,* the Virginia court did not indicate whether or not the defendant parent had liability insurance on his automobile. Yet, in the following succinct language, the action was allowed:

> The very high incidence of liability insurance covering Virginia-based motor vehicles, together with the mandatory uninsured motorist endorsements to insurance policies, has made our rule of parental immunity anachronistic when applied to automobile accident litigation. In such litigation, the rule can be no longer supported as generally calculated to promote the peace and tranquillity of the home and the advantageous disposal of the parents' exchequer. *A rule adopted for the common good now prejudices the great majority.* (Emphasis supplied).

We concur in the well-reasoned principles expressed by the foregoing authorities and expressly reject the parental immunity doctrine in actions by unemancipated minors against their parent to recover for injuries sustained in a motor vehicle accident.

Wherein the decisions in *Chase v. Greyhound Lines, Inc.,* W. Va., 195 S.E.2d 810 (1973); *Adams v. Grogg,* 153 W. Va. 55, 166 S.E.2d 755 (1969); *Freeland v. Freeland,* 152 W. Va. 332, 162 S.E.2d 922 (1968); *Securo v. Securo,* 110 W. Va. 1, 156 S.E. 750 (1931) and any other decisions rendered by this Court are inconsistent with the principles enunciated herein, such decisions are overruled.

Various objections to the abrogation of parental immunity have been voiced in cases such as the one before us. It is feared by some that such action will turn the family into a legal battleground. In the view of many authorities this fear is groundless. As expressed in *Sorensen v. Sorensen, supra,* "When an action is brought against a parent, frequently it will be brought at the instance of, or with the approval of, the parent with an eye toward recovery from the parent's already purchased liability insurance. When there is no insurance coverage it is unlikely that suit will be brought against the parent. In rare cases where the action is a true adversary one against a parent who refuses to contribute sufficiently to the support of a child and to the cure of the child's injuries, judicial formulation of an obstacle to the suit cannot contribute to family harmony or restore the proper relations among the members."

The great majority of the cases cited herein express views similar to *Sorensen.* The theme running throughout such cases is that where insurance exists an action against the parent is beneficial rather than detrimental to the family relationship; where there is no insurance a child will rarely sue; but, if a child does sue a parent, knowing that he is without liability insurance, it then becomes very evident that family tranquillity was nonexistent prior to the suit. Certainly, such action with the child and parent as true adversaries will not spawn any more acrimony or disharmony than would a contract or property action between the same parties, which, as heretofore noted, has long been permitted at common law. *Sorensen v. Sorensen, supra; Streenz v. Streenz, supra; Briere v. Briere, supra; Goller v. White, supra; Gelbman v. Gelbman, supra; Falco v. Pados, supra.*

In opposition to the abrogation of parental immunity it is argued there would be a possibility of collusion between the parent and child with the goal of securing an unjustified recovery from an insurance carrier. This possibility presents a practical problem, but, in the eyes of the "courts which have been intrepid enough to abolish this immunity rule it has seemed that the interest of

the child in freedom from personal injury caused by tortious conduct of others was sufficient to outweigh any danger of fraud or collusion." *Falco v. Pados, supra. See, Tamashiro v. DeGama,* 51 Hawaii 74, 450 P.2d 998 (1969).

The possibility of collusion exists to a degree in the trial of any case. However, through prompt and efficient investigation by the insurance company and active participation by counsel representing both parties, our juries and trial courts have constantly performed the function of distinguishing the frivolous from the substantial, the fraudulent from the meritorious. Even though some collusive claims may succeed, we do not believe that such possibility justifies the continuation of a doctrine designed to deprive minors of the right to maintain an action in such cases. *Immer v. Risko,* 56 N.J. 482, 267 A.2d 481 (1970); *Gelbman v. Gelbman, supra; France v. A.P.A. Transportation Corp., supra; Gibson v. Gibson, supra; Sorensen v. Sorensen, supra.*

After a review and consideration of the arguments for and against the parental immunity doctrine we are of the firm opinion that it should be abrogated in this State. This decision goes no further than to allow actions between unemancipated minors and their parents for injuries suffered as a result of negligent operation of a motor vehicle.

Inasmuch as this case was disposed of below on the defendants' motion to dismiss prior to the taking of any testimony, there is no record before the Court from which a determination can be made in regard to liability. Having held herein that the plaintiff may maintain this action against her father, the case is remanded to the trial court for the full development of the matter of liability, if any.

*Reversed and remanded.*

NEELY, JUSTICE, *concurring:*

The majority opinion in this case makes me feel like the *cesqui que* punch line of the original shaggy dog

story, to-wit: "I wanted it shaggy but not that shaggy!" While the majority cites with approval my concurring opinion in *Chase v. Greyhound Lines, Inc.*, W. Va., 195 S.E.2d 810, at 819 (1973), I did not in that opinion argue for the abrogation of the parental immunity doctrine, but rather limited myself to urging that parental immunity be eliminated in cases where the real party in interest is an insurance carrier rather than a parent.

The first syllabus point of the majority opinion, namely, "Unemancipated minors enjoy the same right to protection and to legal redress for wrongs done them as others enjoy," is overly broad and grossly misleading. For example, if a father and son are engaged in the joint enterprise of trimming a tree, and the father negligently drops a saw on the son, the son does not and should not have a right of action against his father in the absence of insurance. If we were to hew rigorously to the line of the first syllabus point, every family, which is itself a cottage industry, would be well advised to subscribe to the Workmen's Compensation Fund.

The majority opinion implicitly recognizes the widespread existence of automobile insurance by abrogating the doctrine of family immunity exclusively with regard to automobile accidents. The second syllabus point, namely,

> "An unemancipated minor may maintain an action against his parent for personal injuries sustained in a motor vehicle accident caused by the negligence of said parent and to that extent the parental immunity doctrine is abrogated in this jurisdiction,"

is the only real holding of the case; the first syllabus point is obvious dicta. The question still remains whether a child may recover from an uninsured parent as a result of an automobile accident when the child could not recover in the event of a negligently inflicted injury in a non-automobile related accident.

If the Court implicitly recognizes that the operative fact which mandates a rule with regard to automobiles different from the rule in other situations is the existence of insurance, then the Court should say so and proceed to develop logical procedures to protect all concerned. As I recognized in my concurring opinion in *Chase*, an insurance carrier has a unique problem in defending an inter-family suit which does not exist in any other context. Obviously a suit between child and parent, in which the real defendant is an insurance company, is a friendly suit between the nominal parties in which the insurance company can expect only minimal cooperation from the insured. While I agree that insurance carriers should not be able to avoid paying compensation for negligently inflicted injuries because of artificial defenses such as charitable immunity, parental immunity, or spousal immunity, yet insurance carriers should not unnecessarily be made the target of collusive and fraudulent suits and be handicapped in their defense by the continuing myth that insurance has no effect upon the rules of procedure, a rule originally made for their benefit.

Consequently, as I indicated in *Chase*, whenever there is an inter-family suit the insurance company should have the option of defending the suit either in the name of the insured or in its own name as the real party in interest. If the insurance company is of the opinion that there is collusion, or that there is inadequate cooperation on the part of the insured, the insurance company should be able to disown the insured as a party defendant, should not be bound by his statements, and should be able to defend the suit independently of the insured. In addition, an inter-family suit should activate an exception to the rule in West Virginia that insurance may not be mentioned during the course of a law suit and the insurance carrier, at its option, should be permitted to set before the jury the fact that both plaintiff and defendant have a community of interest and that the insurance carrier is the only adverse party.

It would appear to me that the insurance carrier should further be entitled to an instruction that testimony by the insured with regard to the circumstances surrounding the accident should be received with great caution, an instruction similar to the one mandated in criminal cases with regard to the uncorroborated testimony of a co-conspirator. *See, State v. Spadafore*, _____ W. Va. _____, 220 S.E.2d 655 (1975).

The majority opinion has placed insurance carriers in an untenable position and I would urge that the principles of law discussed in this opinion be argued in the lower courts, that records be made squarely raising the problems discussed in this concurring opinion, and that a re-evaluation of this Court's position be urged upon it at the earliest convenient opportunity.