IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 13-0159

_____

FILED

**October 17, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

KIMBERLY LANDIS and ALVA NELSON,
as parents and guardians of A.N., a minor,
Plaintiffs Below, Petitioners

v.

HEARTHMARK, LLC d/b/a JARDEN HOME BRANDS,
WAL-MART STORES, INC., C.K.S. PACKAGING, INC.,
PACKAGING SERVICE COMPANY, INC., and
STULL TECHNOLOGIES, INC.,
Defendants Below, Respondents

_____

Certified Questions from the United States District Court
for the Northern District of West Virginia
The Honorable John P. Bailey, United States District Judge
Civil Action No. 2:11-CV-00101

CERTIFIED QUESTIONS ANSWERED

_____

Submitted: September 11, 2013
Filed: October 17, 2013

Dino S. Colombo, Esq.                    Thomas Mannion, Esq.
Travis T. Mohler, Esq.                   Andrew D. Byrd, Esq.
Colombo Law                              Mannion & Gray Co., LPA
Morgantown, West Virginia                Charleston, West Virginia
Counsel for Petitioners                  Counsel for Respondent,
                                         Packaging Service Co., Inc.


Stephen R. Brooks, Esq.                  P. Joseph Craycraft, Esq.

Lindsey M. Saad, Esq.
Flaherty Sensabaugh Bonasso, PLLC
Morgantown, West Virginia
Counsel for Respondent,
Stull Technologies, Inc.

Edward A. Smallwood, Esq.
Swartz Campbell LLC
Wheeling, West Virginia
Counsel for Respondent,
C.K.S. Packaging, Inc.

Larry W. Blalock, Esq.
Jennifer Cain, Esq.
Jackson Kelly PLLC
Wheeling, West Virginia
Robert W. Hayes, PHV
Cozen O'Connor
Philadelphia, Pennsylvania
Counsel for Respondents,
Hearthmark, LLC and
Wal-Mart Stores, Inc.

JUSTICE KETCHUM delivered the Opinion of the Court.

JUSTICE DAVIS concurs, in part, dissents, in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      In a product liability action brought for injury to a child, the parental immunity doctrine precludes a defendant from asserting a contribution claim against the parents of the child.

2.      In a product liability action brought for injury to a child, an allegedly negligent parent may be included as a third-party defendant for the allocation of fault even though the parental immunity doctrine bars a defendant from asserting a contribution claim against the parents of the child.

3.      In a product liability action brought for injury to a child, the parental immunity doctrine does not preclude a defendant from asserting the defense of abnormal product use by the child's parents to establish the negligence or fault of the parents.

4.      In a product liability action brought for injury to a child, the parental immunity doctrine does not preclude a defendant from asserting, as a defense, that the conduct of a parent was an intervening cause of the child's injuries.

JUSTICE KETCHUM:

The United States District Court for the Northern District of West Virginia presents this Court with four certified questions regarding our law on the parental immunity doctrine. Upon consideration, we have determined that reformulating the questions will allow this Court to fully address the legal issues presented.[1] We answer the reformulated certified questions[2] as follows:

1. In a product liability action brought for injury to a child, does the parental immunity doctrine preclude a defendant from asserting a contribution claim against the parents of the child? Answer: Yes.

2. In a product liability action brought for injury to a child, may an allegedly negligent parent be included as a third-party defendant for the allocation of fault even though the parental immunity doctrine bars a defendant from asserting a contribution claim against the parents of the child? Answer: Yes.

---

[1]This Court held in Syllabus Point 3, in part, of *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993), that

> [w]hen a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in *W.Va. Code*, 51-1A-1, *et seq.*

[2]The District Court certified an additional question to this Court asking whether the parental immunity doctrine should have continued viability in this jurisdiction. Because our answers to the other certified questions resolve the issues presented in this case, we decline to address this additional question.

1

3. In a product liability action brought for injury to a child, does the parental immunity doctrine preclude a defendant from asserting the defense of abnormal product use by the child's parents to establish the negligence or fault of the parents? Answer: No.

4. In a product liability action brought for injury to a child, does the parental immunity doctrine preclude a defendant from asserting, as a defense, that the conduct of a parent was an intervening cause of the child's injuries? Answer: No.

## I. Factual and Procedural Background

Kimberly Landis and Alva Nelson ("parents") filed a product liability action on behalf of their minor child, A.N.,[3] for injuries he suffered following an incident in the family's residence.[4] It is alleged that on February 28, 2010, then seven-year-old A.N. was severely burned while attempting to start a fire in his family's fireplace. A fire had been burning throughout the day in the fireplace. That evening, while A.N.'s mother, father and brother were upstairs, A.N. asked his mother for permission to roast a marshmallow in the fireplace. A.N.'s mother gave him permission and he went downstairs by himself to the fireplace. Believing that the fire had died out, A.N. stacked kindling wood in the fireplace and applied Diamond Fire Starter Gel ("fire starter gel") to the wood. This fire starter gel is

---

[3]We adhere to our usual practice in cases involving sensitive facts and do not refer to the parties using their full names. *See In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005).

[4]When referring to the lawsuit filed by Kimberly Landis and Alva Nelson on A.N.'s behalf, we will refer to them as the "plaintiffs."

2

an ethanol-based substance used to start fires in wood pellet stoves. A.N.'s parents left the fire starter gel bottle on a stand next to the fireplace that was within A.N.'s reach. The bottle's directions for use state that it should be stored away from heat and flame and directs users to "keep out of reach of children." As A.N. was spraying the gel into the fireplace, it allegedly touched a hot ember causing a flame to "flashback" through the bottle cap igniting the vapors within the bottle. This caused an explosion resulting in A.N. suffering severe burns over sixty-five percent of his body.

The plaintiffs filed their complaint asserting product liability causes of action for strict liability, negligence, and breach of warranty against the following parties: (1) Stull Technologies, Inc., the manufacturer of the bottle cap; (2) CKS Packaging Inc., the manufacturer of the bottle; (3) Packaging Services Company, Inc., the producer of the fire starter gel; (4) Hearthmark, LLC, d/b/a Jarden Home Brands, the distributor of the fire starter gel; and (5) Wal-Mart Stores, Inc., the store where the fire starter gel was purchased (referred to collectively as "defendants"). The complaint seeks both compensatory and punitive damages for the child against these defendants. The parents do not assert any causes of action of their own, nor do they seek any damages in this case.

Each of the defendants denied the material allegations contained in the complaint and asserted contribution counterclaims and comparative negligence defenses against A.N.'s parents. The defendants also raised the defenses of product misuse and intervening causation due to A.N.'s parents' conduct. While initially brought as

3

counterclaims, the District Court ordered that the defendants' claims against A.N.'s parents "shall be considered third-party complaints."

The plaintiffs filed a motion to strike Defendant Stull's comparative negligence defense and argued generally that the parental immunity doctrine bars all of the defendants "from arguing that the negligence of A.N.'s parents caused or contributed to their child's injuries." Based on this argument, the plaintiffs moved for judgment on the pleadings as to the defendants' third-party complaints against A.N.'s parents. The District Court denied the plaintiffs' motion without prejudice[5] and invited the parties to seek certification to this Court to decide whether the parental immunity doctrine precludes the defendants from asserting certain defenses and contribution claims against A.N.'s parents. After completing some discovery, the plaintiffs moved for certification and the District Court certified four questions to this Court regarding our law on the parental immunity doctrine.

## II. Standard of Review

When this Court is called upon to resolve a certified question, we employ a plenary review. "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998). *Accord* Syllabus Point 1,

---

[5]The District Court found that "the West Virginia Supreme Court has narrowed the parental immunity doctrine each time it has been considered since 1968." The District Court was therefore "reluctant to predict the continued vitality of the parental immunity doctrine in West Virginia."

4

*Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court."). With this standard in mind, we proceed to examine the parties' arguments.

## III. Analysis

Before addressing the reformulated certified questions, we begin our analysis with a brief discussion of the parental immunity doctrine.

## A. Parental Immunity Background

The parental immunity doctrine prohibits a child from bringing a civil action against his or her parents. *Lee v. Comer*, 159 W.Va. 585, 587-88, 224 S.E.2d 721, 722 (1976). In its original form, the doctrine operated as an absolute bar to suit by a child for personal injuries caused by a parent. *See*, *e.g.*, *Roller v. Roller*, 37 Wash. 242, 79 P. 788 (1905) (father raped daughter); *McKelvey v. McKelvey*, 111 Tenn. 388, 77 S.W. 664 (1903) (stepmother inflicted cruel and inhumane treatment on stepson); and *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (1891) (mother falsely imprisoned child in an insane asylum). In *Hewellette*, the Mississippi Supreme Court determined that the parental immunity doctrine would "preserve the peace of society" and was based on "sound public policy, designed to subserve the repose of families and the best interests of society[.]" *Id*. 9 So. at 887.

5

Following *Hewellette*, *McKelvey*, and *Roller*, there was widespread adoption of the parental immunity doctrine by courts throughout the country. *See* Gail D. Hollister, *Parent-Child Immunity: A Doctrine in Search of Justification*, 50 Fordham L.Rev. 489, 494 (1981).[6] While many courts initially embraced and adopted the parental immunity doctrine, "[i]n recent years, the application of this doctrine has begun to recede as rapidly as it had once spread. There has been a definite trend throughout our courts toward abrogation or limitation of such doctrine." *Lee*, *supra*, 159 W.Va. at 588, 224 S.E.2d at 722. The Wisconsin Supreme Court, for example, abolished the parental immunity doctrine in *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193 (1963), and concluded that it

> ought to be abrogated except in these two situations: (1) where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. Accordingly the rule is abolished in personal injury actions subject to these noted exceptions.

*Id*., at 413, 122 N.W.2d at 198. A number of jurisdictions have followed Wisconsin's lead and either abolished or restricted the parental immunity doctrine.[7]

---

[6]For a detailed history of the development of the parental immunity doctrine, *see* Irene Hansen Saba, *Parental Immunity From Liability in Tort: Evolution of a Doctrine in Tennessee*, 36 U. Mem. L. Rev. 829 (2006)

[7]*Drickersen v. Drickersen*, 546 P.2d 162 (Ala.1976); *Gibson v. Gibson*, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971) (abolishing immunity altogether); *Schlessinger v. Schlessinger*, 796 P.2d 1385 (Colo.1990) (not in automobile injury cases); *Ooms v. Ooms*, 164 Conn. 48, 316 A.2d 783 (Conn.1972) (statutory abrogation of the doctrine in actions for negligence in the operation of a motor vehicle); *Williams v. Williams*, 369 A.2d 669, 673

(continued...)

6

[7](...continued)

(Del.1976) (abolished rule in area of liability for negligent operation of automobile); *Rousey v. Rousey*, 528 A.2d 416 (D.C.App.1987) (child not barred from suing parent for negligence, regardless of insurance); *Krouse v. Krouse*, 489 So.2d 106 (Fla.1986) (statutory abrogation of doctrine in automobile negligence cases, Fla.Stat.Ann. § 768.21(5), 6(b)); *Petersen v. City and County of Honolulu*, 51 Haw. 484, 462 P.2d 1007 (1969) (parent-child negligence suits will be permitted regardless of presence or absence of insurance coverage; immunity doctrine will not be adopted by the Hawaii Supreme Court); *Farmers Ins. Group v. Reed*, 109 Idaho 849, 712 P.2d 550 (1985) (intra-family immunity actions in automobile negligence cases will be maintained only up to limits in the automobile insurance policy; Idaho has a compulsory insurance law); *Turner v. Turner*, 304 N.W.2d 786 (Iowa 1981) (abolished parental immunity); *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980) (unemancipated minor may recover damages in an action brought against parent for personal injuries caused by the negligence of the parent in the operation of a motor vehicle); *Rigdon v. Rigdon*, 465 S.W.2d 921 (Ken.1971) (abrogated doctrine except in area of parental control or parental authority); *Flagg v. Flagg*, 458 A.2d 748 (Me.1983) (child permitted to sue parent for injuries caused by negligence of parent in operating a motor vehicle); *Stamboulis v. Stamboulis*, 401 Mass. 762, 519 N.E.2d 1299 (1988) (quoting *Sorensen v. Sorensen*, 339 N.E.2d 907, which abrogated immunity in motor vehicle tort cases only if insurance coverage was involved); *Sweeney v. Sweeney*, 402 Mich. 234, 262 N.W.2d 625 (1978) (minor may maintain lawsuit for injuries sustained as a result of ordinary negligence); *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983) (in 1979 legislature mandated liability insurance; court held that a parent is not immune from suit brought by his child under the age of emancipation in cases involving parental negligence in the operation of a motor vehicle); *Rupert v. Stienne*, 90 Nev. 397, 528 P.2d 1013 (1974) (the right of a parent to sue a child in tort is without restriction or limitation); *Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966) (minor could maintain action against parent for injuries sustained in automobile accident); *Foldi v. Jeffries*, 93 N.J. 533, 461 A.2d 1145 (1983) (unemancipated child may sue parent for injury resulting from negligent operation of a motor vehicle); *Gelbman v. Gelbman*, 245 N.E.2d 192 (1969); *Carver v. Carver*, 310 N.C. 669, 314 S.E.2d 739 (N.C.1984) (statute abrogated doctrine of parental immunity in personal injury and property damage cases arising out of parent's operation of motor vehicle); *Clark v. Snapper Power Equipment, Inc.*, 21 Ohio St.3d 58, 488 N.E.2d 138 (1986) (minor child's complaint in tort may not be dismissed where the dismissal is premised on a theory that the doctrine of parental immunity is a complete bar to the action); *Winn v. Gilroy*, 296 Or. 718, 681 P.2d 776 (1984) (adopted Restatement (Second) of Torts § 895G approach and abolishes immunity except in instances where the act is not tortious or is privileged); *Elam v. Elam*, 275 S.C. 132, 268 S.E.2d 109 (1980) (abolished parental immunity doctrine); *Jilani v. Jilani*, 767 S.W.2d 671 (Tex.1988)

(continued...)

The Restatement (Second) of Torts, § 895G, follows Wisconsin's narrow application of the parental immunity doctrine. Restatement § 895G states:

> (1) A parent or child is not immune from tort liability to the other solely by reason of that relationship. (2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious.

The evolution of the parental immunity doctrine in West Virginia is consistent with the national trend–after initially being applied in a broad manner, it has narrowed considerably in recent years. The doctrine was first recognized and applied by this Court in *Securo v. Securo*, 110 W.Va. 1, 156 S.E. 750 (1931). In *Securo*, a child who was injured in an automobile accident sued her father, the driver, for negligence. The Court found that the parental immunity doctrine precluded this negligence action and declared

> [t]he basis of this rule . . . lies in the very vital interest which society has in preserving harmony in domestic relations, and in not permitting families to be torn asunder by suits for damages by petulant, insolent, or ungrateful children against their parents for real or fancied grievances.

110 W.Va. at 2, 156 S.E. at 751.

_____

[7](...continued)
(eradicated rule except in instances of reasonable exercise of parental authority or exercise of parental discretion); *Smith v. Kauffman*, 212 Va. 181, 183 S.E.2d 190 (1971) (abolished rule of parental immunity in motor vehicle accident cases); *Jenkins v. Snohomish County Public Utility*, 105 Wash.2d 99, 713 P.2d 79 (1986) quoting *Hoffman v. Tracy*, 67 Wash.2d 31, 406 P.2d 323 (1965) (no parental immunity when a child is injured as a result of negligent driving by a parent).

One year after *Securo* was decided, the Court recognized an exception to the doctrine in *Lusk v. Lusk*, 113 W.Va. 17, 166 S.E. 538 (1932). The Court in *Lusk* declined to apply the doctrine where a child was injured while riding on a bus driven by her father because he was acting in his official business capacity and was covered by indemnity insurance. The Court concluded that "[a] recovery by her is no loss to him," and therefore found that "[w]hen no need exists for parental immunity, the courts should not extend it as a mere gratuity." *Lusk*, 113 W.Va. at 18, 166 S.E. at 539.

In recent years, this Court has narrowed the parental immunity doctrine each time it has been considered. In 1976, the Court overruled *Securo* and held in Syllabus Point 2 of *Lee*, *supra*, that "[a]n unemancipated minor may maintain an action against his parent for personal injuries sustained in a motor vehicle accident caused by the negligence of said parent[.]" The Court made another exception to the doctrine in Syllabus Point 9 of *Courtney v. Courtney*, 186 W.Va. 597, 413 S.E.2d 418 (1991), holding that parental immunity does not apply where a parent intentionally or willfully causes injury or death to a child. Finally, in *Cole v. Fairchild*, 198 W.Va. 736, 482 S.E.2d 913 (1996), the Court considered the application of the parental immunity doctrine to the defense of contributory or comparative negligence of a parent asserted in a wrongful death action. The Court concluded in Syllabus Point 7 of *Cole* that "[t]he parental immunity doctrine does not prohibit the negligence of a

9

parent from being asserted as a defense in an action brought by the parent for the wrongful death of a child."[8]

With this background in mind, we proceed to examine the certified questions before us.

## B. Contribution

The first certified question we address is as follows, in a product liability action brought for injury to a child, does the parental immunity doctrine preclude a defendant from asserting a contribution claim against the parents of the child?[9]

"Contribution is the right of one who owes a joint obligation to call upon his fellow obligors to reimburse him if compelled to pay more than his proportionate share[.]" *Dunn v. Kanawha County Bd. of Educ.*, 194 W.Va. 40, 44, 459 S.E.2d 151, 155 (1995). This

---

[8]The Court in *Cole* stated that the purpose of the parental immunity doctrine is to preserve the

> peace and tranquility of society and families by prohibiting such intra-family legal battles . . . [I]t is said that the real purpose behind the doctrine is simply to avoid undue judicial interference with parental discretion. The discharge of parental responsibilities . . . entails countless matters of personal, private choice. In the absence of culpability beyond ordinary negligence, those choices are not subject to review.

*Id.,* 198 W.Va. at 749, 482 S.E.2d at 926 (internal citation omitted).

[9]This question has been reformulated pursuant to *Kincaid v. Mangum*, *supra*. The District Court's certified question asked "Whether the parental immunity doctrine bars defendants from asserting their independent rights of contribution and indemnity and/or from allocating fault against parents who were allegedly negligent." We have reformulated the question to focus solely on the key issue–whether the defendants may seek contribution from the parents.

10

Court first recognized the right to inchoate contribution in *Haynes v. City of Nitro*, 161 W.Va. 230, 240 S.E.2d 544 (1977). "In *Haynes* . . . we extended a right of contribution to a tortfeasor to bring in as a third-party defendant a fellow joint tortfeasor to share by way of contribution on the verdict recovered by the plaintiff." Syllabus Point 5, *Sydenstricker v. Unipunch Prods., Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982).[10] The Court discussed the purpose of contribution in *Board of Education of McDowell County. v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 603-04, 390 S.E.2d 796, 802-03 (1990) ("*Zando*"), stating:

> The fundamental purpose of inchoate contribution is to enable all parties who have contributed to the plaintiff's injuries to be brought into one suit. Not only is judicial economy served, but such a procedure also furthers one of the primary goals of any system of justice–to avoid piecemeal litigation which cultivates a multiplicity of suits and often results in disparate and unjust verdicts. . . . Moreover, as we have already indicated, joinder of contribution claims serves to ensure that those who have contributed to the plaintiff's damages share in that responsibility.

The plaintiffs contend that the parental immunity doctrine prevents the defendants from seeking contribution because the right to seek contribution "is derivative in the sense that it may be brought by a joint tortfeasor on any theory of liability that could have

---

[10]Prior to *Haynes*, "it was believed that contribution was only available after a joint judgment against joint tortfeasors." *Howell v. Luckey*, 205 W.Va. 445, 448, 518 S.E.2d 873, 876 (1999). This "statutory right" of contribution was conferred by *W.Va. Code* § 55-7-13 [1923], which provided:

> Where a judgment is rendered in an action ex delicto against several persons jointly, and satisfaction of a judgment is made by any one or more of such persons, the other shall be liable to contribution to the same extent as if the judgment were upon an action ex contractu.

11

been asserted by the injured plaintiff." Syllabus Point 4, in part, *Zando*. Since the parental immunity doctrine precludes the plaintiff, A.N., from bringing suit against his parents, the plaintiffs argue that the defendants are unable to bring a contribution claim against A.N.'s parents because there is no derivative theory of liability upon which to base this claim.

The plaintiffs also cite *Unipunch*, *supra*, in which this Court considered a certified question asking whether a manufacturer who had been sued by an injured plaintiff could bring a third-party contribution action against the plaintiff's employer. In *Unipunch*, the Court held that a party who is initially immune from liability may not be joined by a joint tortfeasor for contribution purposes unless the joint tortfeasor demonstrates an express exception to the party's immunity.[11] In Syllabus Point 6 of *Unipunch*, the Court held:

> Where the right of contribution is initially grounded in common liability in tort, courts have held that a joint tortfeasor is immune from a third-party contribution suit because he is initially immune from tort liability to his injured employee by virtue of the workmen's compensation statutory bar of such tort actions.

---

[11]The injured employee in *Unipunch* filed suit against a manufacturer for negligent design, manufacture and distribution. The manufacturer filed a third-party complaint against the employer, alleging that the employer had deliberately rendered the product dangerous, and seeking compensation in either implied indemnity and/or contribution. The employer contended that the Workmen's Compensation Act, *W.Va. Code* § 23-2-6 provided it with immunity from the suit. The Court disagreed and held that "where the Workmen's Compensation Act provides an express exception from immunity against suits by an employee in a tort area, it follows that a suit grounded on this exception would enable a third party to maintain an action in contribution." 169 W.Va. at 449, 288 S.E.2d at 517.

12

The plaintiffs state that they are immune from liability under the parental immunity doctrine and argue that there is no exception to parental immunity that would allow the defendants to pursue a contribution claim.

The plaintiffs next assert that courts in other jurisdictions have considered this question and held that the parental immunity doctrine prohibits contribution claims against a child's parents. In *Crotta v. Home Depot, Inc*., 249 Conn. 634, 732 A.2d 767 (1999), the United States District Court of Connecticut submitted a certified question to the Connecticut Supreme Court asking whether the parental immunity doctrine precludes the parent of a minor child from being joined as a third-party defendant for purposes of contribution. The Connecticut Supreme Court held that a third-party defendant could not bring a contribution claim against a parent and offered the following explanation for its holding:

> "As a general proposition, a tortfeasor compelled to discharge a liability for a tort cannot recover contribution from a joint tortfeasor whose participation therein gave the injured person no cause of action against him, since the element of common liability of both tortfeasors to the injured person, essential to the right of contribution, is lacking in such cases." 25 A.L.R.4th 1123, Joint Tortfeasor Contribution-Family §§ 2[a] (1983); 18 Am.Jur.2d, supra § 65. **"The contribution defendant must be a tortfeasor, and originally liable to the plaintiff. If there was never any such liability, as where the contribution defendant has the defense of family immunity . . . then there is no liability for contribution."** W. Prosser & W. Keeton, Torts (5[th] Ed. 1984) § 50, pp. 339-40; 18 C.J.S., Contribution § 29 (1990) (recognizing that third party may not recover contribution against parent where child has no cause of action against parent for negligent supervision). Again, it is undisputed that, in the present case, the doctrine of parental immunity bars Crotta from being held liable to the plaintiff.

13

> Consequently, the defendants have no basis upon which to assert
> a common-law claim for contribution against Crotta[.]

*Crotta*, 249 Conn. at 640-41, 732 A.2d at 771-72. (Emphasis added). In addition to Connecticut, the plaintiffs assert that a number of other courts outside of our jurisdiction have held that the parental immunity doctrine precludes the parents of a minor child from being joined as a third-party defendant for purposes of contribution.[12]

In opposition to the plaintiffs' arguments, the defendants contend that the parental immunity doctrine should not preclude them from asserting a contribution claim against A.N.'s parents and offer the following arguments in support of their position: (1) contribution is an equitable doctrine that demands that all parties responsible for a plaintiff's injury share in the plaintiff's damages, (2) contribution is an independent right vested in a defendant, rather than a derivative claim that must be based on a plaintiff's theory of liability, and (3) applying the parental immunity to bar the defendants from asserting a contribution claim will not achieve the goals of the parental immunity doctrine.[13]

---

[12]*See Jacobsen v. Schroder*, 117 Idaho 442, 788 P.2d 843 (1990) (parental immunity bars third party tortfeasors from seeking contribution); *Lee v. Mowett Sales Co.*, 316 N.C. 489, 342 S.E.2d 882 (1986) (parental immunity bars suit by child against parent and also third party complaint against parent for contribution); and *Paige v. Bing Constr. Co.*, 61 Mich.App. 480, 233 N.W.2d 46 (1975) (no contribution because parental authority exception to parental immunity doctrine barred defendant's third party complaint against father).

[13]The defendants also argue that courts in other jurisdictions have ruled that the parental immunity doctrine does not prevent a defendant from seeking contribution from a minor child's parent. While the defendants acknowledge that the Connecticut Supreme Court's ruling in *Crotta* supports the plaintiffs' position, the defendants cite the following cases that support their position: *Hartigan v. Beery*, 470 N.E.2d 571 (Ill. App.Ct. 1984);

(continued...)

14

The defendants argue that contribution is a doctrine grounded in equity. The defendants cite *Puller v. Puller*, 380 Pa. 219, 221, 110 A.2d 175, 177 (1955), in which the court stated that "contribution is not a recovery for the tort but the enforcement of an equitable duty to share in the liability for the wrong done." Further, the defendants state that permitting contribution will ensure that those who have contributed to the plaintiff's damages share in that responsibility. Therefore it would be inequitable to require a defendant to be wholly responsible for a child's damages merely because the joint tortfeasor happened to be the child's parent.

The defendants next argue that contribution is an independent right afforded to them under Rule 14(a) of the *West Virginia Rules of Civil Procedure* which allows a defendant to "bring in as a third party-party defendant one who is or may be liable to him for all or part of the plaintiff's claim[.]" *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 344, 256 S.E.2d 879, 886 (1979). The defendants state that this Court referred to contribution as a "right" in *Grant Thornton, LLP v. Kutak Rock, LLP*, 228 W.Va. 226, 236, 719 S.E.2d 394, 404 (2011) ("The touchstone of th[is] right of inchoate contribution[.]"). Because contribution is an independent right, the defendants contend that the plaintiffs' reliance on *Unipunch* and *Zando* is misplaced. The defendants state that "the reference to

[13](...continued)
*Chinos Villas, Inc. v. Bermudez*, 448 So.2d 1179 (Fla. App.3d Dist. 1984); and *Bishop v. Nielsen*, 632 P.2d 864 (Utah 1981).

15

the derivative nature of contribution" in *Unipunch* should not prevail over their independent "right" to assert a contribution claim.

Finally, the defendants argue that this Court should not apply the parental immunity doctrine to prevent them from asserting a contribution claim against A.N.'s parents because doing so will not achieve the two purposes behind the doctrine–avoiding undue judicial interference with parental discretion and preserving family harmony. *Cole*, 198 W.Va. at 749, 482 S.E.2d at 926. The defendants cite this Court's statement in *Lusk*, *supra*, as support for their position: "When no need exists for parental immunity, the courts should not extend it as a mere gratuity." *Lusk*, 113 W.Va. at 18, 166 S.E. at 539.

After considering both parties' arguments, we are guided by the decisions of this Court in *Unipunch* and *Zando*. While a defendant has a right of contribution against a joint tortfeasor, *Unipunch* and *Zando* clearly establish that the right "is derivative in the sense that it may be brought by a joint tortfeasor on any theory of liability that could have been asserted by the injured plaintiff." Syllabus Point 4, *Zando*.

In the instant case, the defendants' right of contribution is derivative of the rights of the injured plaintiff, A.N. The parental immunity doctrine remains in effect in West Virginia and it prohibits a child from bringing a civil action against his or her parents. *See Lee, supra*. Because the parental immunity doctrine prevents A.N. from asserting a claim against his parents, the defendants are likewise unable to pursue a contribution claim against A.N.'s parents. This ruling is consistent with the statement from W. Prosser & W. Keeton, *Torts* (5th Ed. 1984) § 50, cited in *Crotta*, *supra*, that "[t]he contribution defendant must be

16

a tortfeasor, and originally liable to the plaintiff. If there was never any such liability, as where the contribution defendant has the defense of family immunity . . . then there is no liability for contribution."

Based on the foregoing, we answer this question in the affirmative and hold that in a product liability action brought for injury to a child, the parental immunity doctrine precludes a defendant from asserting a contribution claim against the parents of the child.

## C. Comparative Negligence

The second certified question we address is as follows, in a product liability action brought for injury to a child, may an allegedly negligent parent be included as a third-party defendant for the allocation of fault even though the parental immunity doctrine bars a defendant from asserting a contribution claim against the parents of the child?[14]

Under the comparative negligence doctrine, a plaintiff is not entitled to recover from a negligent tortfeasor if the plaintiff's own contributory negligence equals or exceeds

---

[14]This question has been reformulated pursuant to *Kincaid v. Mangum*, *supra*. The District Court's certified question asked "Whether allegedly negligent parents should be included as a nonparty for the allocation of fault, even though parental immunity would still bar recovery of the damages allocated to the parent." Because the District Court converted the defendants' counterclaims against A.N.'s parents into third-party complaints, we refer to the parents' as third-party defendants rather than "nonparties."

We note that in its order of certification, the District Court cited *Paris ex rel. Paris v. Dance*, 194 P.3d 404 (Colo. App. 2008), in which a Colorado court concluded that a parent could be designated as a nonparty for the allocation of fault, even though the parental immunity doctrine would still bar recovery of damages allocated to the parent. The District Court concluded that this approach "could be relevant" to this Court's consideration of this issue.

17

the combined negligence of the other parties involved in the accident. As we stated in Syllabus Point 3 of *Bradley v. Appalachian Power Co.*, *supra*,

> A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the parties involved in the accident.

The plaintiffs contend that the parents' alleged comparative negligence should not be permitted to be considered by a jury because the defendants are only permitted to compare their degree of fault with parties who have asserted a viable claim for contribution. Because the parents are shielded from contribution under the parental immunity doctrine, the plaintiffs assert that the parents' alleged comparative negligence should not be considered.

Further, the plaintiffs state that their position is consistent with *W.Va. Code* § 55-7-24(a)(1) [2005], addressing joint and several liability, which states

> [i]n any cause of action involving the tortious conduct of more than one defendant, the trial court shall: (1) instruct the jury to determine . . . the proportionate fault of each of the parties in the litigation at the time the verdict is rendered.

The plaintiffs argue that because the parents will not be "parties in the litigation" at the time the verdict is rendered due to their parental immunity, the jury should not be instructed to determine their degree of fault.

By contrast, the defendants assert that a plaintiff's comparative fault *must* be ascertained in relation to *all* parties whose negligence contributed to the accident. The defendants state that this Court's holding in *Bowman v. Barnes*, 168 W.Va. 111, 282 S.E.2d 613 (1981), controls the issue. We agree.

18

The Court in *Bowman* considered the width of our comparative negligence rule and held in Syllabus Point 3 that

> [i]n order to obtain a proper assessment of the total amount of the plaintiff's contributory negligence under our comparative negligence rule, *it must be ascertained in relation to all parties* whose negligence contributed to the accident and not merely those defendants involved in the litigation.

(Emphasis added). The Court in *Bowman* directly addressed whether the negligence of an alleged tortfeasor with immunity from suit could be considered:

> Undoubtedly, there may be situations where the absent party cannot be brought into the suit, either because the party is beyond the court's jurisdiction, or has the benefit of some immunity. . . . In these situations, it would appear to be unfair to preclude a consideration of the plaintiff's contributory negligence in regard to this absent party . . . the plaintiff should not be able to diminish his own contributory negligence by the inability to bring a particular party into the litigation.

168 W.Va. at 123, 282 S.E.2d at 620. *See also Cline v. White*, 183 W.Va. 43, 45, 393 S.E.2d 923, 925 (1990) ("[D]efendants are entitled to have a jury consider the fault of all the joint tortfeasors involved in the injury.").

Based on this Court's holding in *Bowman*, we reject the plaintiffs' argument that the defendants "are only permitted to compare their relative degrees of fault among those parties against which they have a viable claim for contribution." The Court's holding in *Bowman* was not restricted to parties seeking contribution. Similarly, we find that *W.Va. Code* § 55-7-24(a)(1) requires consideration of "the proportionate fault of each of the parties in the litigation at the time the verdict is rendered." *W.Va. Code* § 55-7-24(a)(1) does not

19

prevent the alleged negligence of A.N.'s parents, as third-party defendants, from being considered.

Finally, we note that this Court has previously determined that the parental immunity doctrine does not prohibit the negligence of a parent from being asserted as a defense. The Court considered the issue in *Cole v. Fairchild*, *supra*, and concluded in Syllabus Point 7 that "[t]he parental immunity doctrine does not prohibit the negligence of a parent from being asserted as a defense in an action brought by the parent for the wrongful death of a child." While the policy implications underlying the parental immunity doctrine in a wrongful death case are different than those in a case involving an injury to a child, we nevertheless find the Court's rationale in *Cole* to be applicable to the instant matter:

> Based upon equitable principles of fairness, as well as concepts underlying the doctrine of comparative negligence, we believe any parental negligence which proximately causes the death of the parent's child should be considered when determining the liability of a third party.

*Id.*, 198 W.Va. at 749-50, 482 S.E.2d at 926-27.

Based upon equitable principles of fairness, the concepts underlying the doctrine of comparative negligence, and this Court's ruling in *Bowman* and *Cole*, we answer this certified question in the affirmative. We hold that in a product liability action brought for injury to a child, an allegedly negligent parent may be included as a third-party defendant for the allocation of fault even though the parental immunity doctrine bars a defendant from asserting a contribution claim against the parents of the child. Put in the context of the comparative negligence doctrine in *Bradley v. Appalachian Power Co.*, *supra*, the plaintiff,

20

A.N., may not recover damages if his own contributory negligence equals or exceeds the combined negligence of the defendants and the third-party defendants, A.N.'s parents, in this case.

## D.  Abnormal Product Use

The next certified question we address is as follows, in a product liability action brought for injury to a child, does the parental immunity doctrine preclude a defendant from asserting the defense of abnormal product use by the child's parents to establish the negligence or fault of the parents?[15]

This Court adopted the defense of abnormal product use in *Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 889, 253 S.E.2d 666, 683 (1979).  Syllabus Point 4 of *Morningstar* set forth the following general test to determine whether a product is defective:

> In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use.  The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent

---

[15]This question has been reformulated pursuant to *Kincaid v. Mangum*, *supra*.  The District Court's certified question asked "Whether the parental immunity doctrine precludes defendants from asserting well-established product liability defenses of product misuse and superseding intervening causation, in order to demonstrate lack of defect and foreseeability in a child's product liability action?"  Because we find that two distinct issues are raised by this question–the defense of abnormal product use and the defense of intervening causation–we have reformulated the District Court's question into two separate questions.

manufacturer's standards should have been at the time the product was made.

The Court defined the intended use of a product as "all those uses a reasonably prudent person might make of the product, having in mind its characteristics, warnings and labels." *Id.* 162 W.Va. at 889, 253 S.E.2d at 683. We noted in *Morningstar* that "[t]he issue of appropriate use of the product has as a counterpart the defense of abnormal use, which may at times carry the companion defenses of contributory negligence and assumption of risk on the part of the user." *Id.* The Court in *Morningstar* relied on Dean Prosser's statement that

> *[t]he seller is entitled to expect a normal use of his product, and is not liable when it is put to an abnormal one.* This too has been carried over to strict liability. On either basis, the seller is not liable when the product is materially altered before use, or is combined with another product which makes it dangerous, or is mishandled, or used in some unusual and unforeseeable way, as when a wall decorating compound is stirred with the finger, or nail polish is set on fire, or an obstinate lady insists on wearing shoes two sizes too small. *The seller is entitled to have his due warnings and instructions followed; and when they are disregarded, and injury results, he is not liable.*

*Id.* (Emphasis added).

The plaintiffs ask that we answer this certified question in the affirmative and preclude the defendants from asserting the defense of abnormal product use by A.N.'s parents. The plaintiffs argue that "any abnormal use defense could only . . . be directed at A.N., and not a non-party such as the parents." The plaintiffs state that A.N. was the only one using the product at the time of the accident, therefore "the parents' prior use, misuse, or abnormal use of the fire gel product has no bearing on the question" of whether A.N. used

22

the product in a manner that a reasonably prudent person might make of the product in determining whether the product was safe for its intended use.

We agree with the plaintiffs that in determining whether the product was defective, *i.e.*, whether it was reasonably safe for its intended use, it is the child's use of the product at the time of the injury that determines whether the product was reasonably safe for its "intended use." However, the defendants state that the parents' abnormal use occurred when they stored the bottle near the fireplace and left it within reach of a seven-year-old child.

We find that the parental immunity doctrine does not preclude the defendants from asserting the defense of abnormal product use by A.N.'s parents to establish their negligence or fault. This Court has held that the defense of abnormal use may carry with it the companion defense of contributory negligence. *See Morningstar*, 162 W.Va. at 889, 253 S.E.2d at 683. Similarly, in Syllabus Point 5 of *Star Furniture Co. v. Pulaski Furniture Co.*, 171 W.Va. 79, 297 S.E.2d 854 (1982), this Court held that "[c]omparative negligence is available as an affirmative defense in a cause of action founded on strict liability so long as the complained of conduct is not a failure to discover a defect or to guard against it." This Court has never extended the parental immunity doctrine to prevent a defendant from asserting a defense in a product liability action, and we decline to do so in this case.

Based on all of the above, we answer this certified question in the negative and hold that in a product liability action brought for injury to a child, the parental immunity

23

doctrine does not preclude a defendant from asserting the defense of abnormal product use by the child's parents to establish the negligence or fault of the parents.

## E. Intervening Cause

The final reformulated certified question we consider is as follows, in a product liability action brought for injury to a child, does the parental immunity doctrine preclude a defendant from asserting, as a defense, that the conduct of a parent was an intervening cause of the child's injuries?[16]

This Court discussed intervening cause in *Sydenstricker v. Mohan*, 217 W.Va. 552, 618 S.E.2d 561 (2005), stating:

> Our law recognizes that an intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.

*Id.* at 559, 618 S.E.2d at 568 (internal citation omitted). The Court in *Sydenstricker* observed that an intervening cause "can be established only through the introduction of evidence by a defendant that shows the negligence of another party or a nonparty." *Id.* Although it is recognized that a negligent defendant may be saved from liability by an intervening cause, "such a cause only arises when the negligence of a party other than the defendant intervenes and becomes the only proximate cause of the injury." *Costoplos v. Piedmont Aviation, Inc.*,

---

[16]This question has been reformulated. *See* footnote 15, *supra*.

24

184 W.Va. 72, 74, 399 S.E.2d 654, 656 (1990).  The intervening cause must be a negligent act or omission which constitutes a new effective cause and which operates independently of any other act, making it, and only it, the cause of the injury. *Id.*

The plaintiffs concede that the parents' conduct could be relevant to demonstrate intervening causation.[17]  Similarly, the defendants assert that the parental immunity doctrine does not preclude them from offering evidence that the parents' conduct was an intervening cause of A.N.'s injuries.

Based on the foregoing, we answer this question in the negative and hold that in a product liability action brought for injury to a child, the parental immunity doctrine does not preclude a defendant from asserting, as a defense, that the conduct of a parent was an intervening cause of the child's injuries.

### IV.  Conclusion

To summarize, we answer the reformulated certified questions as follows:

1.  In a product liability action brought for injury to a child, does the parental immunity doctrine preclude a defendant from asserting a contribution claim against the parents of the child?  Answer: Yes.

---

[17]The plaintiffs' brief addresses intervening cause twice, stating, (1) "West Virginia law recognizes that evidence concerning the conduct of non-parties is neither relevant nor admissible outside of the rare case in which such evidence is relevant to show intervening, superseding cause," and (2) "the parents' conduct in this litigation is not relevant or admissible unless offered to demonstrate supervening or intervening causation[.]"

2. In a product liability action brought for injury to a child, may an allegedly negligent parent be included as a third-party defendant for the allocation of fault even though the parental immunity doctrine bars a defendant from asserting a contribution claim against the parents of the child? Answer: Yes.

3. In a product liability action brought for injury to a child, does the parental immunity doctrine preclude a defendant from asserting the defense of abnormal product use by the child's parents to establish the negligence or fault of the parents? Answer: No.

4. In a product liability action brought for injury to a child, does the parental immunity doctrine preclude a defendant from asserting, as a defense, that the conduct of a parent was an intervening cause of the child's injuries? Answer: No.

Certified Questions Answered.