IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

**FILED**

May 21, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0158

MODULAR BUILDING CONSULTANTS OF WEST VIRGINIA, INC. and
BILLY JOE MCLAUGHLIN,
Defendants/Third-Party Plaintiffs Below, Petitioners

v.

POERIO, INC.,
Third-Party Defendant Below, Respondent

Appeal from the Circuit Court of Putnam County
The Honorable Joseph K. Reeder, Judge
Case No. 11-C-277

AFFIRMED

Submitted:  March 10, 2015
Filed:  May 21, 2015

Brent K. Kesner, Esq.
Ernest G. Hentschel, II, Esq.
KESNER & KESNER, PLLC
Charleston, West Virginia
Attorneys for Modular Building
Consultants of West Virginia, Inc. and
Billy Joe McLaughlin

Benjamin T. Hughes, Esq.
PULLIN, FOWLER, FLANAGAN,
BROWN & POE, PLLC
Charleston, West Virginia
Attorney for Respondent

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE BENJAMIN concurs in part and dissents in part and reserves the right to file a separate opinion.
JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1.      "The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure [1998] is *de novo*."  Syl. Pt. 1, *Fredeking v. Tyler,* 224 W.Va. 1, 680 S.E.2d 16 (2009).

2.      "When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the West Virginia Rules of Civil Procedure [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party."  Syl. Pt. 2, *Fredeking v. Tyler,* 224 W.Va. 1, 680 S.E.2d 16 (2009).

3.      "In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences

which reasonably may be drawn from the facts proved." Syl. Pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983).

4. "Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

5. "When jury verdicts answering several questions have no logical internal consistency and do not comport with instructions, they will be reversed and the cause remanded for a new trial." Syl. Pt. 1, *Reynolds v. Pardee & Curtin Lumber Co.*, 172 W. Va. 804, 310 S.E.2d 870 (1983).

6. "Once comparative fault in regard to contribution is recognized, recovery can be had by one joint tortfeasor against another joint tortfeasor *inter se* regardless of their respective degree of fault so long as the one has paid more than his *pro tanto* share to the plaintiff." Syl. Pt. 4, *Sitzes v. Anchor Motor Freight, Inc.*, 169 W. Va. 698, 289 S.E.2d 679 (1982).

7. "A party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for

contribution." Syl. Pt. 6, *Bd of Educ. of McDowell Co. v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E.2d 796 (1990).

8.    "The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation[.]"  Syl. Pt. 1, in part, *Sanders v. Roselawn Mem'l Gardens*, 152 W. Va. 91 159 S.E.2d 784 (1968).

9.    Where a tortfeasor settles with an injured plaintiff and obtains a release for a joint tortfeasor, such release preserves the settling tortfeasor's right of contribution against the released joint tortfeasor.

10.    "In order to obtain a proper assessment of the total amount of the plaintiff's contributory negligence under our comparative negligence rule, it must be ascertained in relation to all of the parties whose negligence contributed to the accident, and not merely those defendants involved in the litigation."  Syl. Pt. 3, *Bowman v. Barnes*, 168 W. Va. 11, 282 S.E.2d 613 (1981).

11.    "It is improper for counsel to make arguments to the jury regarding party's omission from a lawsuit or suggesting that the absent party is solely responsible for the plaintiff's injury where the evidence establishing the absent party's liability has not been fully developed." Syl. Pt. 2,  *Doe v. Wal-Mart Stores, Inc.*, 210 W. Va. 664, 558 S.E.2d 663 (2001).

12. "'The common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested.' *Shifflette v. Lilly*, 130 W.Va. 297, [43 S.E.2d 289 1947]." Syl. Pt. 4, *Seagraves v. Legg*, 147 W.Va. 331, 127 S.E.2d 605 (1962).

WORKMAN, Chief Justice:

This is an appeal from the circuit court's denial of petitioner Modular Building Consultants of West Virginia, Inc.'s (hereinafter "Modular") motion for judgment as a matter of law or for a new trial following an adverse jury verdict on Modular's claims for contribution and indemnification. Modular contends that 1) the jury's finding that respondent Poerio, Inc. (hereinafter "Poerio") was negligent is inconsistent with its finding that Poerio did not breach the lease agreement; 2) the circuit court erred in ruling that Modular's contribution claim was extinguished by its good faith settlement with the injured plaintiff; and 3) the circuit court erred in allowing the injured plaintiff's comparative fault to be assessed by the jury.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the circuit court erred in finding that Modular's contribution claim was extinguished as a matter of law. However, we further find that the jury's verdict was neither inconsistent nor impermissibly considered the comparative fault of the injured plaintiff. We find, therefore, that judgment was properly entered in favor of Poerio and affirm the order of the circuit court.

1

# I. FACTS AND PROCEDURAL HISTORY

On July 14, 2011, Jarrett Smith (hereinafter "Mr. Smith") was injured when his vehicle collided with a truck owned by Modular, operated by Billy Joe McLaughlin (hereinafter "Mr. McLaughlin"). Just prior to the collision, Mr. McLaughlin had arrived at a jobsite at Geary Elementary School to retrieve a Modular storage container being leased and utilized by respondent Poerio, the general contractor on the project. Upon arrival at the jobsite, Mr. McLaughlin testified that the main entrance was blocked by stacks of bricks and vehicles, requiring him to utilize the construction entrance located closer to where the storage unit was sitting. Upon attempting to access the construction entrance, Mr. McLaughlin testified that he was unable to pull his truck fully into the jobsite because the clearance he required was partially obstructed by the storage container itself and a white work van. As a result, he stopped his truck while it was protruding into the main roadway and exited his vehicle to adjust the truck's axle, allowing him to make a tighter turn into the jobsite and clear the white work van and container. Upon Mr. McLaughlin's return to his vehicle to continue pulling into the jobsite, Mr. Smith collided with Mr. McLaughlin's truck sustaining serious injuries. At trial, Poerio offered witnesses to testify that the main entrance was in fact *not* obstructed by bricks or vehicles at the time of the accident.

The lease agreement between Modular and Poerio for the subject storage container contained indemnity language requiring Poerio to indemnify Modular from "any loss, cost or expenses and from any liability to any person on account of damage to

2

person or property arising out of any *failure of [Poerio] to comply in any respect with and perform any of the requirements and provisions of this Lease*." (emphasis added). As pertains to this case, the lease required Poerio to "provide free and clear access for delivery and return of the Equipment by standard mobile transport vehicles."

Mr. Smith filed suit against Modular, alleging negligence. Modular then brought a third-party complaint against Poerio, making claims for contribution and indemnification pursuant to the lease agreement. Specifically, Modular claimed that Poerio breached the provision of the lease agreement requiring it to provide "free and clear access" for return of the storage container.[1] Notably, Mr. Smith asserted no direct claims against Poerio at any time. Shortly before trial was to commence, Modular settled with Mr. Smith and obtained a release from him releasing both Modular *and* Poerio.[2] Trial as to Modular's third-party complaint proceeded and the jury was asked to

---

[1] The lease further provided that Poerio "shall not remove the Equipment from the location specified by [Poerio] without prior written approval from [Modular.]" Although at trial, there was some discussion about the fact that Poerio had moved the storage container from its original location without Modular's permission (along with argument that "removal" of the equipment from the site was different than moving it to another location within the site), Modular ultimately conceded that it did not base its contention that Poerio breached the lease on this provision.

[2] Modular settled with Mr. Smith and his wife, in exchange for which Mr. Smith and his wife expressly released both Modular and Poerio. The Release further contained language stating that "[n]othing contained within this Release of All Claims is intended to, nor should the same be construed to represent any release or discharge of [Modular's] third-party claims for contribution and/or indemnification against Poerio, which claims are expressly preserved." The Release further states that "[Modular] act[s] specifically to preserve their right to recover contribution and/or indemnification from Poerio and/or its insurer for those sums paid to the claimants pursuant to this Release of All Claims[.]"

3

determine 1) whether Poerio breached its lease agreement with Modular; and 2) whether Poerio, Modular, or Mr. Smith were negligent and in what percentages. The jury found that Poerio did *not* breach the lease agreement, but found that Poerio was twenty percent at fault for the accident. The jury also assigned twenty percent of fault to Modular and, critically, assigned sixty percent of fault to Mr. Smith. Upon entry of the judgment order, the circuit court entered judgment in Poerio's favor on its contribution claim on the basis of the apportionment of fault and as a matter of law based upon *Jennings v. Farmers Mut. Ins. Co.*, 224 W. Va. 636, 687 S.E.2d 574 (2009), which the circuit court read to extinguish the contribution claim upon Modular's settlement with Mr. Smith.[3]

Modular filed a motion for judgment as a matter of law, or alternatively, a new trial. First, Modular argued that the jury's finding that Poerio did not breach the lease agreement was inconsistent with its finding that Poerio was negligent. Modular contended that the only possible way Poerio could have been negligent for the subject accident was by failing to provide free and clear access to the storage unit and that failing to provide free and clear access was a violation of the lease agreement. Without specifically reconciling the two jury findings, the circuit court concluded that it was exclusively the jury's province to weigh the evidence and could make both findings. Secondly, Modular argued that its contribution claim was not extinguished by settling

---

[3] The circuit court apparently reconsidered the propriety of allowing the contribution claim to go to the jury, which issue had been raised prior to trial and decided in favor of Modular.

4

with Mr. Smith because unlike the settling party in *Jennings*, it had obtained a release for both its *and* Poerio's liability as part of the settlement, thereby preserving its contribution claim. The circuit court, recognizing this as an issue of first impression, nevertheless found *Jennings* analogous and concluded that the contribution claim was extinguished as a matter of law due to the good faith settlement reached with Mr. Smith. Finally, Modular argued that it was improper for the circuit court to include Mr. Smith on the verdict form for purposes of apportionment of fault since he was not a party to the litigation, as required under West Virginia Code § 55-7-24. The circuit court concluded that because Mr. Smith testified, the jury had the necessary evidence to apportion fault to him and that, even if erroneous, it was harmless error. As a result of the foregoing, the circuit court denied Modular's motion and this appeal followed.

## II. STANDARD OF REVIEW

This case presents itself upon the circuit court's denial of Modular's motion for judgment as a matter of law, or, in the alternative for a new trial. With respect to Modular's motion for judgment as a matter of law, this Court has held:

> The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*.

> When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the

5

evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

Syl Pts. 1 and 2, *Fredeking v. Tyler,* 224 W.Va. 1, 680 S.E.2d 16 (2009). As pertains to this Court's review of the sufficiency of the evidence,

the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syl. Pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983).

Insofar as Modular's motion for a new trial is concerned, this Court reviews "the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995). "Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). With these standards in mind, we proceed to Modular's assignments of error.

6

### III.  DISCUSSION

**A. Inconsistency of Verdict**

Modular's first assignment of error asserts that the jury's finding that Poerio was negligent, but did not breach the lease agreement is inconsistent.  Modular argues that the only evidence of negligence against Poerio adduced at trial was that it failed to provide free and clear access to the storage container, which would be a breach of the lease.  Modular argues that if the jury found that Poerio was negligent, it necessarily must have also violated the lease agreement.  Poerio denies that the access issue was the only accusation leveled at trial, and maintains that Modular tried to "paint it in a bad light" claiming that Poerio did not offer specific directions for access to the storage unit or provide flaggers to assist Mr. McLaughlin.

This Court has held that "[w]hen jury verdicts answering several questions have no logical internal consistency and do not comport with instructions, they will be reversed and the cause remanded for a new trial."  Syl. Pt. 1, *Reynolds v. Pardee & Curtin Lumber Co.*, 172 W. Va. 804, 310 S.E.2d 870 (1983).  In determining whether jury verdicts are inconsistent, the Court has observed that with respect to inconsistent verdict, "such inconsistency must appear after excluding every reasonable conclusion that would authorize the verdict." *Prager v. City of Wheeling*, 91 W. Va. 597, 599, 114 S.E. 155, 156 (1922).

7

We find this assignment of error easily resolved. Critically, there was conflicting testimony as to whether the *main* entrance to the school was blocked or not. The jury could have concluded that it was not blocked, thereby providing free and clear access to the storage unit, irrespective of the obstructions to the *construction* entrance Mr. McLaughlin chose to utilize. Therefore, the lease agreement would not have been breached by Poerio. However, in spite of this finding, the jury could have likewise been persuaded by Modular's insinuation throughout the testimony of various witnesses that Poerio improperly failed to advise Modular of the location and proper means of access for the storage container when Modular called prior to pick-up to ensure the storage container was empty. The jury could have also been persuaded by Modular's suggestion that Poerio employees should have assisted in flagging for Mr. McLaughlin when he stopped the Modular truck partially in the roadway. Moreover, there was much discussion about the location to which Poerio moved the storage unit, which location, along with the white work van caused the obstruction of the construction entrance where Mr. McLaughlin attempted to enter. Accordingly, the jury could have concluded that there existed a free and clear access to the storage unit but that, in spite of that access, Modular utilized the other entrance which Poerio negligently allowed to become blocked and/or failed to warn or assist him in that regard.[4]

---

[4]Although not argued by Poerio, as additional grounds for finding against Modular on this assignment of error, we note that counsel for Modular made no objection to the
(continued . . .)

8

We therefore find that there are a variety of "reasonable conclusions" which would authorize the verdict and that the circuit did not err in refusing to grant a new trial on this basis.

## B. Extinguishment of Contribution Claim

Modular's next assignment of error presents an issue of first impression. Modular argues that the circuit court erred in concluding that its settlement with Mr. Smith served to extinguish Modular's contribution claim against Poerio where Modular obtained a release for Poerio in such settlement.[5]

---

inconsistent verdict at the time the verdict was returned and before the jury was discharged. After the circuit court read the verdict, it inquired of counsel:

> The Court:    Does either party wish to address any motions with regard to any irregularities with regard to the form?

> Mr. Kesner:   No, Your Honor.

The Court has held that "[a]bsent extenuating circumstances, the failure to timely object to a defect or irregularity in the verdict form when the jury returns the verdict and prior to the jury's discharge, constitutes a waiver of the defect or irregularity in the verdict form." Syl. Pt. 2, *Combs v. Hahn*, 205 W. Va. 102, 516 S.E.2d 506 (1999). Moreover, "[t]he right [to clarification of an irregular verdict] after waiver cannot be reclaimed and revived by a motion for a new trial." *Id*. at 107, 516 S.E.2d at 511.

[5] As noted above, the circuit court initially ruled in Modular's favor pre-trial in allowing the contribution claim to be presented to the jury. Post-judgment and particularly during post-trial motions, however, the circuit court ostensibly revisited the propriety of the claim and reversed course, finding the contribution claim extinguished as a matter of law. *See* n. 3, *supra*.

"Once comparative fault in regard to contribution is recognized, recovery can be had by one joint tortfeasor against another joint tortfeasor *inter se* regardless of their respective degree of fault so long as the one has paid more than his *pro tanto* share to the plaintiff." Syl. Pt. 4, *Sitzes v. Anchor Motor Freight, Inc.*, 169 W. Va. 698, 289 S.E.2d 679 (1982). It is well-established that a settlement with a plaintiff by a joint tortfeasor extinguishes any claim for contribution against that settling tortfeasor. In Syllabus Point 6 of *Bd of Educ. of McDowell Cnty. v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E.2d 796 (1990), the Court held that "[a] party in a civil action who has made a good faith settlement with the plaintiff prior to a judicial determination of liability is relieved from any liability for contribution." Moreover, the Court has historically found the opposite to also be true, *i.e.* the settling tortfeasor cannot pursue contribution against a non-settling tortfeasor. *See Charleston Area Med. Ctr., Inc. v. Parke-Davis*, 217 W. Va. 15, 614 S.E.2d 15 (2005) (refusing to allow settling tortfeasor to pursue contribution for pre-suit settlement with plaintiff); *Jennings*, 224 W. Va. 636, 687 S.E.2d 574 (refusing to allow settling tortfeasor to pursue contribution after settlement with tortfeasor purporting to represent tortious acts of joint tortfeasor). However, critically, in each of these cases, the settling tortfeasor's settlement with plaintiff released *only* the settling tortfeasor. *See Parke-Davis*, 217 W. Va. at 23, n.11, 614 S.E.2d at 23, n.11 (observing that "CAMC was the only party released from liability"); *Jennings*, 224 W. Va. at 639, 687 S.E.2d at 577 ("Ms. Jennings settled and released all her claims against Farmers Mutual [.]").

10

The question then is whether the fact that Modular obtained a release for Poerio—a party Mr. Smith did not sue and against which Mr. Smith's statute of limitations had run at the time of trial—preserves Modular's claim for contribution against Poerio. Although this issue has not been squarely addressed by this Court, the *Parke-Davis* Court obliquely noted that, as in West Virginia, states which have adopted the Uniform Contribution Among Tortfeasors Act ("UCATA") typically find that a settlement by a joint tortfeasor terminates its right of contribution, "barring a release obtained by the settling tortfeasor that expressly extinguishes any liability against *all* tortfeasors." 217 W. Va. at 23, n.11, 614 S.E.2d at 23, n.11 (emphasis added); *see also Mackey v. Irisari*, 191 W. Va. 355, 361 n.4, 445 S.E.2d 742, 748 n.4 (1994) (recognizing rule in UCATA states that where settling defendant settles only his share, contribution does not lie, but contribution may be had from defendant whose liability was extinguished by joint tortfeasor's settlement).

Urging the Court to adopt this rule, Modular argues that if it were not permitted to preserve its claim for contribution by obtaining a release for Poerio, in a case where it felt strongly that Poerio was the primary wrongdoer, it would have no incentive to settle with the badly injured plaintiff. The only way then to preserve its contribution claim would be to refuse to settle with plaintiff and proceed to trial. Modular insists that such a result would run contrary to our strong public policy favoring out-of-court resolution of disputes: "The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation[.]" Syl. Pt. 1, in part,

*Sanders v. Roselawn Mem'l Gardens*, 152 W. Va. 91 159 S.E.2d 784 (1968); *see also Zando*, 182 W. Va. at 604, 390 S.E.2d at 803 (same).

Poerio, on the other hand, contends that Modular's unilateral action of settling with Mr. Smith and obtaining a release on Poerio's behalf, all without its involvement, should not make it a hostage to Modular's settlement. Poerio claims that Modular "willingly and voluntarily" "bought protection from a potentially large verdict[.]" Poerio argues heavily that the *Jennings* case cited by the circuit court is controlling and, without specifically citing to such authority, appears to argue that absent a "forcible" common obligation by judgment, no right of contribution lies. *See* Syl. Pt. 4, in part, *Sydenstricker v. Unipunch Products, Inc.*, 169 W. Va. 440, 288 S.E.2d 511 (1982) ("The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation."); *see also Parke-Davis*, 217 W. Va. at 23, 614 S.E.2d at 23 ("Given that CAMC acted of its own salutary accord in deciding to settle the claims raised by the child's estate, it cannot claim to have be 'forced to pay more than [its] *pro tanto* share.'").[6]

---

[6] Poerio also argues that if Modular wanted to cap its liability while preserving its contribution claim, it could have entered a "Mary Carter" agreement with plaintiff. A "Mary Carter" agreement is one where plaintiff enters a settlement with a defendant who guarantees the plaintiff a certain recovery regardless of outcome. This type of agreement tends to "realign the loyalties of the parties and change their trial tactics" and is not particularly favored. *Reager v. Anderson*, 179 W. Va. 691, 702, 371 S.E.2d 619, 630 (continued . . .)

12

To examine this question further, the rationale behind the extinguishment of contribution claims upon settlement must be examined. The underlying reasoning behind the preclusion of a contribution claim by a settling tortfeasor against a non-settling tortfeasor is that the non-settling tortfeasor remains exposed to the plaintiff and therefore will theoretically pay his share of liability, if any, directly to the plaintiff. Similarly, "[t]he settling defendant is, in effect, paying a share of liability on the verdict." *Zando*, 182 W. Va. at 605, 390 S.E.2d at 804. To allow the settling tortfeasor to pursue contribution while the non-settling tortfeasor remains exposed to the plaintiff would result in the non-settling tortfeasor being doubly exposed for his negligence. *See Estate of Dresser v. Maine Med. Ctr.*, 960 A.2d 1205, 1209 (Me. 2008) (Mead, J., dissenting) ("The necessity of extinguishing liability of non-settling tortfeasors is clear: failure to do so could expose a non-settling tortfeasor to liability on both the underlying claim and the contribution claim.") However, where a joint tortfeasor purchases or otherwise obtains a release for the non-settling tortfeasor, the non-settling tortfeasor is obviously no longer

---

(1988) *see also Mackey*, 191 W. Va. at 363, 445 S.E.2d at 750 (1994) ("This case points out the problems with a 'Mary Carter' settlement agreement.'").

Regardless, however, of the availability and/or relative merits of a Mary Carter agreement, the fact of the matter is that such an agreement was not reached in this case. Therefore, its potential availability is irrelevant to the issues presented. More to the point, however, Modular had little chance of getting Smith to make a Mary Carter agreement in this case because that would require Smith to proceed to trial for the sole purpose of making a case against Poerio—a party it did not even feel necessary to sue. Smith would have no incentive whatsoever to agree to remain in the case only to help Modular pursue its contribution claim.

13

exposed to plaintiff. [7]  In this case, Modular made the strategic decision to settle with a badly injured plaintiff, Mr. Smith, to remove that potentially inflammatory aspect of the case from the jury in an effort to control damages.  Mr. Smith voluntarily gave a release for both Modular and Poerio for the settlement, thereby extinguishing Poerio's potential exposure to Mr. Smith.  This critical distinction makes *Jennings* and our other caselaw involving only a release of the settling tortfeasor of little utility.[8]

---

[7] The fact that Smith did not sue Poerio directly and the statute of limitations had run as against Poerio has been found by an "overwhelming majority" of other courts to be of no moment to this analysis.  *Smith v. Jackson,* 721 P.2d 508, 510 (Wash. 1986).  The rationale is typically that the contribution plaintiff should not be hamstrung by the underlying plaintiff's lack of diligence:  "[P]laintiff's claim should not be compromised merely because the underlying claimant failed to comply with a statute of limitations as to the contribution defendant."  *MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc.,* 685 N.E.2d 529, 533 (Ohio 1997).  The *MetroHealth* court further concluded that the statutory requirement that a contribution defendant be "'liable in tort' means no more than that the contribution defendant acted tortiously and thereby caused damages.'"  *Id*. at 532.  *See also Martin v. CSX Transportation, Inc.,* 617 F. Supp.2d 662, 667 (N.D. Ohio 2009) (finding that "the expiration of the limitations period on the underlying tort claim does not serve to extinguish liability in a subsequent contribution action."); *Doyle v. Rhodes*, 461 N.E.2d 382, 388 (Ill. 1984) (finding that whether a party is "subject to liability" to the plaintiff for purposes of contribution is determined at the time of the injury, not when the matter proceeds to trial); *G & P Trucking v. Parks Auto Sales Serv. & Salvage*, 591 S.E.2d 42, 45 (S.C. 2003) (finding that "the running of the statute of limitations in and of itself cannot operate to 'extinguish' a tortfeasor's liability" because "it is subject to certain counter-assertions, such as waiver, tolling, and estoppel."); *cf. Zando,* 182 W. Va. at 603, 390 S.E.2d at 802 ("The touchstone of the right of inchoate contribution is this inquiry:  Did the party against whom contribution is sought breach a duty to the plaintiff which caused or contributed to the plaintiff's damages?")

[8] Moreover, none of the disqualifying factors for the contribution claim in *Parke-Davis* are present here.  The *Parke-Davis* Court was critical of the absence of an original complaint by the injured plaintiff and proper joinder of all parties in a unitary action.  The case *sub judice* proceeded exactly as contemplated for the bringing of a contribution (continued . . .)

14

The UCATA adopted in many states expressly provides: "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor *whose liability for the injury or wrongful death is not extinguished by the settlement*[.]" § 1(d) (emphasis added). The comments to the Act further explain that

> The policy of the Act is to encourage rather than discourage settlements. The tortfeasor who settles removes himself entirely from the case so far as contribution is concerned if he is able and chooses to buy his peace for less than the entire liability. *If he discharges the entire obligation it is only fair to give him contribution from those whose liability he has discharged.*

(emphasis added); *see also* 18 Am. Jur.2d *Contribution* § 70 (1985) ("A joint tortfeasor, who enters into a settlement of the common liability with an injured person, is entitled to recover contribution from another tortfeasor, whose liability to the injured person was extinguished by that settlement" barring a statute providing otherwise); Restatement (Third) of Torts: Apportionment of Liability § 23 ("When two or more persons are or may be liable for the same harm and one of them discharges the liability of another by settlement or discharge of judgment, the person discharging the liability is entitled to recover contribution from the other[.]") Although frequently governed by statute, the

---

claim: "The procedural mechanism for invoking [a] non-statutory right of contribution . . . is by means of third-party joinder . . . . [W]hether the inchoate right of contribution can be asserted in a given case will generally be determined based upon compliance with the procedural requirements necessary to invoke such right." *Parke-Davis*, 217 W. Va. at 20, 614 S.E.2d at 20. The only procedural irregularity was created by the subsequent settlement of Mr. Smith.

15

overwhelming majority of states likewise permit contribution claims where one tortfeasor extinguishes the liability of another joint tortfeasor. [9]

Certainly, this Court is no stranger to the policy underlying this rule and has in fact stated "[i]t would seem proper social policy that a wrongdoer should not escape

---

[9] *See In re Rural/Metro Corp. Stockholders Litig.,* 102 A.3d 205, 223 (Del. Ch. 2014) (recognizing ability of "one or more joint tortfeasors to settle on behalf of themselves and another joint tortfeasor and then pursue that joint tortfeasor for its share of the settlement payment") *Robarts v. Diaco,* 581 So.2d 911, 915 (Fl. Dist. Ct. App. 1991) ("for such a right of contribution to exist, a nonsettling joint tortfeasor must also have been released from all liability to the injured party for the tort."); *Gump v. Wal-Mart Stores, Inc.,* 5 P.3d 407 (Haw. 2000) (recognizing necessity of release of joint tortfeasor against whom contribution is sought); *Brockman Mobile Home Sales v. Lee,* 567 P.2d 1281, 1283 (Idaho 1977) ("A joint tortfeasor who enters into a settlement with the injured person is entitled to recover contribution from another joint tortfeasor whose liability to the injured person is extinguished by the settlement."); *State Farm Fire and Cas. Co. v. Jones,* 768 N.E.2d 805, 806 (Ill. App. Ct. 2002) ("[A] joint tortfeasor who wishes to settle with a claimant and intends to seek contribution from another tortfeasor must secure the other tortfeasor's release in order to preserve its right to contribution."); *Union Elec. Co. v. Metropolitan St. Louis Sewer Dist.,* 258 S.W.3d 48, 55 (Mo. 2008) ("[W]hen the party seeking contribution has settled with the original plaintiff, the settling party has a right of contribution "'only . . . if the liability of the person against whom contribution is sought has been extinguished[.]"); *Estate of Powell ex rel. Powell v. Montange,* 765 N.W.2d 496, 504 (Neb. 2009) ("[A] right of contribution among joint tort-feasors is not established if the tort-feasor seeking contribution extinguishes only his or her liability and does not extinguish the liability of the other joint tort-feasors from whom contribution is sought."); *The Doctors Co. v. Vincent,* 98 P.3d 681, 683 (Nev. 2004) ("[A] joint tortfeasor seeking to perfect a contribution claim in the context of a settlement must first extinguish the liabilities of the other joint tortfeasors against whom contribution recovery is sought."); *Husni v. Meden,* 640 N.E.2d 1207 (Ohio Ct. App. 1994) (barring contribution claim where release did not extinguish joint tortfeasor's liability); *Schuman v. Vitale,* 602 A.2d 390 (Pa. 1992) (same); *G & P Trucking v. Parks Auto Sales Service & Salvage, Inc.,* 591 S.E.2d 42 (S.C. Ct. App. 2003) (same); *Kirk v. Moe,* 789 P.2d 84 (Wash. 1990) (recognizing right of contribution against joint tortfeasor where release is obtained on his behalf).

16

his liability on the fortuitous event that another paid the entire joint judgment." *Sitzes*, 169 W. Va. at 708, 289 S.E.2d at 686. Moreover, we agree with the Supreme Court of Nebraska's statement that

> [u]nder equitable principles, the discharge of such liability is a benefit to the tort-feasor from whom contribution is sought. However, without such discharge, the other tort-feasor may remain liable to the injured party and the tort-feasor seeking contribution will not have fixed the amount of liability for which contribution is sought.

*Estate of Powell*, 765 N.W.2d at 504. The Colorado Court of Appeals likewise found that "to prohibit the [settling tortfeasor who obtains a release for a joint tortfeasor] from getting contribution would make for an inequitable distribution of the loss, and would result in the [non-settling, released tortfeasor] being unjustly enriched through the [settling tortfeasor's] complete payment of a joint obligation." *Miller v. Jarrell*, 684 P.2d 954, 957 (Colo. Ct. App. 1984). However, "[a] settlement by one tort-feasor that does not extinguish the common liability does not confer a benefit upon which a claim for contribution may be asserted." *Estate of Powell*, 765 N.W.2d at 504.[10] Finally, as Modular correctly notes, were this Court not to adopt this rule, it would discourage similarly situated defendants from settling with injured plaintiffs and sparing them the burdens of trial; to preserve their contribution claim, they would have to refuse to settle

---

[10] In fact, this concept was articulated in *Parke-Davis*: "[W]hile CAMC sought to establish a legal obligation jointly owed by it and Defendants through the underlying cause of action, the predicate common obligation owed to the injured party was not established through that proceeding." 217 W. Va. 23, 614 S.E.2d at 23. In the case *sub judice*, the common obligation was created by virtue of the settlement and release on behalf of both Modular and Poerio.

17

and proceed to trial with the plaintiff in tow all for the purpose of compelling a joint tortfeasor to pay its share.

We therefore hold that where a tortfeasor settles with an injured plaintiff and obtains a release for a joint tortfeasor, such release preserves the settling tortfeasor's right of contribution against the released joint tortfeasor. Accordingly, we find that the circuit court erred when it concluded that Modular's claim of contribution was extinguished as a matter of law by Modular's settlement with Mr. Smith.

## C. Apportionment of Fault to the Injured Plaintiff, Mr. Smith

Having determined that the contribution claim was not extinguished by Modular's settlement with Mr. Smith, Modular's final assignment of error asserts that the circuit court erred in permitting Mr. Smith to be placed on the verdict form for purposes of apportionment of fault. Modular argues that this Court has held that "empty chair" arguments are impermissible and that West Virginia Code § 55-7-24, only permits the jury to determine proportionate fault of "each of the parties in the litigation at the time the verdict is rendered[.]" Since Mr. Smith had settled and was not a party at the time of trial, Modular argues that his comparative fault should not have been assessed.

Poerio, on the other hand, argues that West Virginia Code § 55-7-24 merely governs joint and several liability and is therefore inapplicable as this was simply a contribution claim, *i.e.*, there was no joint and several liability to be rendered since Mr.

Smith had settled. Poerio further argues that Mr. Smith was called as a witness by Modular and his involvement in the accident was fully presented through his testimony and the testimony of a Poerio employee, who saw Mr. Smith looking at the job site just before the accident.[11]

Contrary to what the parties appear to believe, there is no *per se* ban on "empty chair" arguments in West Virginia. This notion first appeared in *Groves v. Compton*, 167 W. Va. 873, 879, 280 S.E.2d 708, 712 (1981), wherein the Court noted in *dicta* that "it is improper for counsel to argue to the jury . . . that an absent party is solely responsible for the accident *since the evidence surrounding such absent party's liability has not been fully developed*." (emphasis added). However, in the following term of Court, we held that "[i]n order to obtain a proper assessment of the total amount of the plaintiff's contributory negligence under our comparative negligence rule, it must be ascertained in relation to all of the parties whose negligence contributed to the accident, and not merely those defendants involved in the litigation." Syl. Pt. 3, *Bowman v. Barnes*, 168 W. Va. 111, 282 S.E.2d 613 (1981).

The spectre of the "empty chair" ban was raised again in 2001, when this Court reiterated the general impropriety of arguing the fault of absent parties, with a strong, but often overlooked, caveat. In Syllabus Point 2 of *Doe v. Wal-Mart Stores, Inc.*,

---

[11] Mr. Smith suffered a head injury and therefore had no memory of the subject accident. He put up little resistance during his testimony to the idea that he was distracted at the time of the collision.

210 W. Va. 664, 558 S.E.2d 663 (2001), the Court held that "[i]t is improper for counsel to make arguments to the jury regarding party's omission from a lawsuit or suggesting that the absent party is solely responsible for the plaintiff's injury *where the evidence establishing the absent party's liability has not been fully developed*." (emphasis added). There has been little discussion of what level of evidentiary development is necessary to invoke this exception.

However, this Court subsequently suggested that where issues of plaintiff's comparative negligence and joint tortfeasors converge, the jury should assess the fault of all parties. In *Rowe v. Sisters of the Pallottine Missionary Soc'y*, 211 W. Va. 16, 560 S.E.2d 491 (2001), the sole remaining defendant in a medical malpractice trial asserted that it was error for the trial court to refuse to allow plaintiff and a settling defendant to be placed on the verdict form for apportionment of fault. The *Rowe* Court first noted that *Bowman* only requires assessment of the fault of all parties where plaintiff is alleged to be contributorily negligent; however, the Court found that there was no viable contributory negligence claim in *Rowe*: "*[W]ithout some proof of negligence by the plaintiff,* there is no requirement that the jury be instructed to ascertain or apportion fault between the defendant and a non-party tortfeasor." *Id*. at 24, 560 S.E.2d at 499 (emphasis added). With respect to the non-party tortfeasor, the Court observed that there were no contribution claims, 211 W. Va. at 24 n.5, 560 S.E.2d at 499 n.5, and therefore any apportionment of fault was irrelevant. *Id*. at 25, 560 S.E.2d 500. By contrast, in the instant case, the plaintiff *is* the non-party and there is ample evidence of his comparative

20

negligence. Moreover, since Smith settled just prior to trial, there can be little question that "evidence establishing the absent party's liability has [] been fully developed" in the litigation and presented at trial as required by *Doe*.

In addition to caselaw supporting the placement of Mr. Smith on the verdict form for the apportionment of fault, simple fairness would seem to require it under these circumstances. Poerio refused to settle this matter as it was of the opinion that Mr. Smith was fifty percent or greater at fault, which would bar his recovery. Modular, preferring not to take such a risk in front of a jury, settled with Mr. Smith and obtained a release for Poerio—acts over which Poerio had no control. If Poerio were not permitted to have the jury assess Mr. Smith's fault, it creates a false presumption that Mr. Smith had a viable, collectible claim and was entitled to recover against one or both defendants. This fiction necessarily connotes that one or both defendants were more than fifty percent at fault and the jury must simply decide how much each defendant should pay. It is patently inequitable to hamstring Poerio with the settlement and release obtained by Modular, yet strip it of its ability to advance its primary defense to the case—the recovery-barring fault of Mr. Smith. When Modular paid to obtain a release for both itself and Poerio, it ran the risk that a jury would agree that Mr. Smith was not entitled to recover because his negligence totaled fifty percent or greater.

Similarly motivated by a balancing of the equities, this Court has recently endorsed the placement of an immune defendant on the verdict form as required by

21

"equitable principles of fairness, the concepts underlying the doctrine of comparative negligence, and this Court's ruling in *Bowman*[.]" *Landis v. Hearthmark, LLC*, 232 W. Va. 64, 75, 750 S.E.2d 280, 291 (2013). In *Landis*, this Court held that in a product liability action, an allegedly negligent parent could be included as a third-party defendant even though the parental immunity doctrine bars a claim of contribution against the parent. The court noted that *Bowman's* admonition that all parties' fault must be assessed was not limited to parties against whom there was a claim of contribution. *Id*. at 74, 750 S.E.2d at 290.

Finally, as to Modular's argument that West Virginia Code § 55-7-24 governs this scenario, we disagree. West Virginia Code § 55-7-24 is entitled "Apportionment of *damages*" and, simply put, deals with joint and several liability of defendants (emphasis added). As we observed in *Sitzes*, "the concept of joint and several liability after judgment relates primarily to the liability of all of the joint tortfeasors *to the plaintiff*." 169 W.Va. at 706, 289 S.E.2d at 685 (emphasis added). "The basic purpose of the joint and several liability rule is to permit the injured plaintiff to select and *collect* the full amount of his damages against one or more joint tortfeasors." *Id*. at 707; 289 S.E.2d at 685 (emphasis added). Accordingly, the practical effect of West Virginia Code § 55-7-24 concerns the *collectability* of a judgment by a plaintiff.

Modular argues that the requirement to determine "proportionate fault of each of the parties in the litigation at the time the verdict is rendered" contained in West

Virginia Code § 55-7-24 is evidence that consideration of the fault of non-parties is *per se* impermissible in West Virginia. However, this mere reference in our joint and several liability statute does not evince a Legislative intent that West Virginia Code § 55-7-24 serve as an omnibus statute exclusively governing the apportionment of comparative fault and the consideration of fault of nonparties.[12] Both of these concepts are a creation of and governed by the common law. *See Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979) (creating West Virginia's modified comparative fault standard); *Bowman*, 168 W. Va. 111, 282 S.E.2d 613 (determining absent party's role in comparative negligence). "'The common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested.' *Shifflette v. Lilly*, 130 W.Va. 297, [43 S.E.2d 289 1947]." Syl. Pt. 4, *Seagraves v. Legg*, 147 W.Va. 331, 127 S.E.2d 605 (1962). "If the Legislature intends to alter or supersede the common law, it must do so clearly and without equivocation." *State ex rel. Van Nguyen v. Berger*, 199 W.Va. 71, 75, 483 S.E.2d 71, 75 (1996). With its 2005 enactment, West Virginia Code § 55-7-24 simply does not, nor does it purport to, alter our common law regarding the assessment of fault against non-parties which pre-existed the statute for twenty-four years. *See also Landis,* 232 W. Va. at 74, 750 S.E.2d at 290 (finding that West Virginia Code § 55-7-24 does not preclude consideration of immune defendant's fault).

---

[12] In contrast, H. B. 2002, which becomes effective on May 25, 2015, repeals both West Virginia Code §§ 55-7-24 and 55-7-13 and enacts a series of new statutes which in fact do purport to fully occupy the field of comparative fault and the consideration of "the fault of parties and nonparties to a civil action[.]" H. B. 2002, 2015 Leg. 82nd Sess. (W. Va. 2015) (to be codified at West Virginia Code §§ 55-8-13a through 13d).

In more practical terms, it is clear that the use of the particular language in West Virginia Code § 55-7-24 is simply necessary to properly effectuate the calculations and apportionments governed by the statute. In order to properly calculate a plaintiff's damages and therefore the amounts owed by the respective tortfeasors, it is in fact necessary to first "determine . . . the total amount of damages sustained by the claimant" and then determine the "proportionate fault of each of the parties in the litigation at the time the verdict is rendered" to determine 1) the amount to which plaintiff is entitled; and 2) which tortfeasors are severally or jointly and severally liable, such that plaintiff may determine from whom his verdict is collectible. With Mr. Smith having settled, apportionment of fault for purposes of the joint and several statute is pointless; Smith is not seeking to "recover" from the joint tortfeasors.

We therefore find that the circuit court committed no error in permitting Mr. Smith to be placed on the verdict form for purpose of fault apportionment. Inasmuch as the jury returned a verdict of sixty percent negligence as to Mr. Smith, Poerio is entitled to judgment in its favor as to Modular's contribution claim.[13]

---

[13] Modular also argues that because both it and Poerio were found to be twenty percent at fault and therefore in *equal* fault, Poerio must pay fifty percent of the settlement to Modular. This argument not only flies in the face of our conclusion that Mr. Smith's negligence was properly assessed by the jury, but simply does not reflect a realistic representation of the jury's conclusions. The jury did not conclude that Poerio bears fifty percent responsibility for damages to which Mr. Smith was entitled; rather, it found Poerio twenty percent at fault for a claim which is barred by operation of law due to Mr. Smith's percentage of comparative negligence.

## IV. CONCLUSION

For the reasons set forth hereinabove, we affirm the December 12, 2013, order of the circuit court.

Affirmed.